IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE R. GILBANK and
T.E.H., a minor, by next friend and mother,
Michelle R. Gilbank,

                Plaintiffs,

  v.

WOOD COUNTY DEPARTMENT OF HUMAN
SERVICES, MARSHFIELD POLICE DEPARTMENT,
CHILDREN'S HOSPITAL OF WISCONSIN,
THERESA HEINZEN-JANZ, DEREK IVERSON,
MARY CHRISTENSEN, ANNE LACHAPELLE,
MARY SOLHEIM, GREGORY POTTER, NICHOLAS
BRAZEAU, JR., and DOES 1-10,

                Defendants.

OPINION and ORDER

20-cv-601-jdp

---

    Pro se plaintiff Michelle R. Gilbank filed this lawsuit against two government agencies, a hospital, four social workers, a police detective, and two judges, contending that defendants violated her and her minor daughter's constitutional rights when T.E.H. was removed from her custody for more than a year. Several motions are pending before the court.

    First, the defendant judges (Gregory Potter and Nicolas Brazeau, Jr.) have filed motions to dismiss on several grounds. Dkt. 4 and Dkt. 7. I will grant those motions because plaintiffs' claims against the judges are barred by the Eleventh Amendment and the doctrine of judicial immunity.

    Second, the Wood County defendants (Wood County Department of Human Services and social workers Theresa Heinzen-Janz, Mary Christensen, Anne La Chappelle, and Mary Solheim) have filed a motion to dismiss some of plaintiffs' claims. Dkt. 17. The Department argues that it cannot be sued, and the individual defendants argue that plaintiffs' conspiracy

claims under 42 U.S.C. § 1986 should be dismissed. Defendants' arguments are persuasive, so I will grant the motion.

Third, defendant Children's Hospital of Wisconsin filed a motion to dismiss plaintiffs' claims against it, arguing that plaintiffs' allegations do not state any claim for relief against it. Dkt. 19. I agree and will grant that motion as well.

Fourth, the Wood County defendants filed a motion to dismiss T.E.H.'s claims on the ground that she is not represented by counsel or a guardian ad litem. Dkt. 31. Plaintiffs responded to the motion by requesting that the court assist them in recruiting counsel or a guardian ad litem to represent T.E.H. Dkt. 37. Gilbank also filed motion to be exempted from paying PACER fees. Dkt. 16. For the reasons below, I will grant the county defendants' motion to dismiss T.E.H.'s claims without prejudice, and I will deny Gilbank's motions without prejudice.

ALLEGATIONS OF FACT

Gilbank alleged the following facts in her amended complaint, which I accept as true for purposes of evaluating defendants' motions to dismiss.

In June 2018, plaintiff Michelle Gilbank and her minor child, T.E.H., who was four years old at the time, were living temporarily with T.E.H.'s father, Ian Hoyle. Hoyle had been convicted of first-degree sexual assault of a six-year-old girl, and he was permitted to have only supervised visits with T.E.H. Hoyle drank alcohol and used drugs on a regular basis, and sometimes his behavior became inappropriate or dangerous, causing Gilbank and T.E.H. to leave the residence frequently.

On June 29, 2018, one of Hoyle's neighbors reported to the police that Hoyle had been yelling at Gilbank and T.E.H. and had locked them out. Defendant Theresa Heinzen-Janz, a social worker from Wood County Human Services, and two officers from the Marshfield Police Department came to Hoyle's residence to perform a welfare check. Gilbank told Heinzen-Janz and the officers that she and T.E.H. were safe at the moment because Hoyle was at work, but that Gilbank needed help finding housing and accessing mental health care. Heinzen-Janz said that she would return to see Gilbank on July 3. Before July 3, Heinzen-Janz and defendant Derek Iverson, a detective from Marshfield Police Department, spoke with Hoyle about Gilbank. Hoyle apparently reported that Gilbank had drug problems.

On July 3, Heinzen-Janz and Iverson went to see Gilbank at Hoyle's residence. Iverson asked Gilbank about her drug use. Gilbank stated that she had used street drugs in the past to alleviate her PTSD symptoms. She also said that living with Hoyle made it hard to maintain sobriety because he was always high or drunk. Iverson made Gilbank take a drug test, and Heinzen-Janz forged Gilbank's signature on a paper stating that the test was voluntary. Heinzen-Janz and Iverson left, but they surveilled Gilbank over the next couple of weeks.

On July 26, Hoyle punched holes in the walls of his residence and ripped his phone in half while yelling at Gilbank. Hoyle then called the police and asked them to remove Gilbank from his residence. Defendant Iverson and defendant Doe 1, a social worker with Wood County Department of Human Services, arrived at Hoyle's residence. Hoyle left to go drink at a bar. Iverson told Gilbank and T.E.H. to sleep in the garage that night to be safe. Gilbank found out later that Iverson did not file a report of the incident.

A few weeks later, Gilbank woke up during the middle of the night because Hoyle was attempting to remove her clothes. She fought him off and he left the room. The next morning,

Gilbank found Hoyle in the living room, where he was unclothed and masturbating while watching pornography on the television. T.E.H. was sitting next to him. Gilbank took T.E.H. and left.

Three days later, on August 21, 2018, Gilbank told Hoyle that she and T.E.H. were moving out and that she had an appointment for housing assistance that morning. Unbeknownst to Gilbank, Hoyle then contacted defendants Heinzen-Janz, Iverson, and Anne La Chappelle, another social worker with Wood County Department of Human Services, about removing T.E.H. from Gilbank's custody. Heinzen-Janz, Iverson, La Chappelle, and others from Marshfield Police Department and Human Services planned to seize T.E.H. from Gilbank. They did not obtain a warrant or talk to a judge about their plan.

After Gilbank and T.E.H. finished their housing appointment, a Marshfield police officer stopped Gilbank in her car. The officer told Gilbank that her license had been suspended for failure to pay a previous ticket. A K9 unit arrived, and Gilbank and T.E.H. were ordered to leave the vehicle. Gilbank called Hoyle, Hoyle's mother, and a friend, and asked them to pick up T.E.H. at the traffic stop.

After receiving Gilbank's call, Hoyle immediately went to his lawyer's office and directed his lawyer to file a motion for sole custody of T.E.H. and termination of his child support obligations. The motion stated that Gilbank had been arrested for possession of methamphetamine. The motion was filed before the search of Gilbank's car was complete and before she was arrested or charged.

Drugs and paraphernalia were found in Gilbank's car. (Gilbank says that the items belonged to Hoyle.) Gilbank was arrested and taken to Marshfield Police Department for questioning by defendants Iverson and Heinzen-Janz. Gilbank stated that she did not know

4

about any drugs in the vehicle and she asked for an attorney. Iverson declined to call an attorney for Gilbank and continued to question her, stating that if she did not admit guilt and cooperate, he would report that she was not cooperating with the "safety plan" and that she was a danger to her child. Iverson also stated that he would recommend placement of T.E.H. with Hoyle if she did not cooperate. Gilbank was not aware that there was a safety plan in place. Later that day, she was notified that T.E.H. had been placed with Hoyle. She was also told that she could not to contact T.E.H., that she could not return home, and that there would be a hearing regarding custody within 48 hours.

Gilbank posted bail on August 22, and she returned to the courthouse on August 23 to ask about the custody hearing. She was told that the hearing had taken place already, before defendant Judge Gregory Potter. Heinzen-Janz and Iverson gave false testimony at the hearing to justify the removal of T.E.H. without a warrant. Gilbank wrote to Judge Potter that she contested T.E.H.'s placement with Hoyle. Potter then recused himself from the case, and the case was transferred to defendant Judge Nicolas Brazeau, Jr. Gilbank filed motions requesting that the hearing be reopened, but Judge Brazeau denied her motions.

On September 6, 2018, Gilbank was interviewed at Children's Hospital of Wisconsin. Gilbank was given a release form to sign, which stated that information about her visits with T.E.H. would be released to Hoyle. Gilbank stated that she did not feel comfortable with Hoyle having information about her because he had abused her. Hospital staff told Gilbank that if she did not sign the release, she would not be able to see T.E.H.

On September 25, 2018, the court held an evidentiary hearing at which several witnesses testified that Gilbank was a good mother to T.E.H. and that T.E.H. was healthy and well cared for. Defendant Heinzen-Janz testified that because Gilbank had testified positive for

5

drugs on July 3, 2018, Gilbank obviously had an addiction problem that was out of control. Brazeau concluded that Gilbank was lying about her drug use, and he ordered that T.E.H. remain with Hoyle, even though Hoyle admitted at the hearing that he had used drugs.

Gilbank was upset about T.E.H. being taken from her and told Human Services about Hoyle's drug and alcohol use and addictions, but defendant Mary Christensen, another social worker with Wood County, told her that if she continued to complain that she would never get T.E.H. back. Whenever Gilbank complained about what had happened, Christensen would increase restrictions on Gilbank's visits with T.E.H. Christensen, Heinzen-Janz, and Iverson later shared Gilbank's urine test results and mental health prescriptions with Hoyle.

In February 2020, Gilbank regained full custody of T.E.H. after Hoyle admitted that he had been placing his fingers on T.E.H.'s vagina daily. T.E.H. received a sexual assault examination, and both Gilbank and T.E.H. have experienced ongoing trauma as a result of the incidents of the past two years.

OPINION

Gilbank has sued Wood County Department of Human Services, Marshfield Police Department, Children's Hospital of Wisconsin, Detective Derek Iverson, Judges Gregory Potter and Nicholas Brazeau, Jr., and four social workers: Teresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim. She discusses several legal theories in her complaint, including: interference with her and T.E.H.'s right to familial association; unlawful seizure of T.E.H.; violation of Gilbank's right to counsel and against self-incrimination; and violation of Gilbank's and T.E.H.'s due process rights.

6

**A. T.E.H.'s claims and Gilbank's motion requesting assistance in recruiting counsel**

T.E.H. is a minor, and minors can bring suit in federal court only through an appointed representative, a guardian ad litem, or a next friend. Fed. R. Civ. P. 17(c). Gilbank has identified herself as T.E.H.'s next friend, but a parent cannot sue as a next friend on behalf of a minor child unless the parent is represented by counsel. *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.") (citation omitted). Acknowledging this rule, Gilbank has filed a motion requesting that the court recruit counsel to represent her or appoint a guardian ad litem to represent T.E.H. I will deny Gilbank's motion.

A pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, she must show that she is unable to afford counsel. Gilbank has not filed any financial information with the court, so I cannot determine whether she is unable to afford counsel. I will attach to this order a financial affidavit that Gilbank can submit to the court. (The court will also use the financial affidavit to determine whether Gilbank can be exempt from paying PACER fees, as she has requested. Dkt. 16.)

Second, she must show that he made reasonable efforts on her own to find a lawyer to represent her. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). Gilbank has satisfied this requirement by submitting letters from several lawyers who declined to represent her in this case.

Third, Gilbank must show that the legal and factual difficulty of the case exceeds her ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. The inquiry into a litigant's abilities to handle his own case is a practical one, made in light of "whatever relevant evidence" is available. *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). Courts generally consider the litigant's "literacy, communication skills, education level, and litigation experience in light of the complexities of the case." *Pruitt*, 503 F.3d at 655. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [her case] to the judge or jury" herself. *Id.* at 655. Almost all of this court's pro se litigants would benefit from the assistance of counsel, but there are not enough lawyers willing to take these types of cases to give each plaintiff one. I must decide for each case whether the particular plaintiff should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020).

Gilbank's filings in this case show that she is intelligent, articulate, and understands the basic facts and legal theories applicable to her case. She has not identified any any reason why this case would be too complex for her to handle on her own. She has requested counsel or a guardian ad litem only so that she can bring claims on behalf of T.E.H. Although I am sympathetic to Gilbank's desire to bring claims on behalf of her minor daughter, I decline to recruit counsel or a guardian ad litem for this purpose. The court has found that it is exceedingly difficult to find counsel or guardians ad litem who are willing and able to accept civil rights cases on a pro bono basis. This is particularly true if counsel would be required to handle the case from start to finish, as would be required in this case, rather than for a limited purpose.

8

In addition, this court generally does not attempt to recruit counsel until after a case has survived the summary judgment stage, as it is difficult to find counsel willing to accept a case that has undergone no merits review by the court. In this instance, some of Gilbank's claims concern custody and placement decisions taken by government officials, some of which were approved by state court judges. Some of Gilbank's claims may be barred by the *Rooker-Feldman* doctrine, the domestic relations doctrine, issue preclusion, or claim preclusion. *See Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018); *Golden v. Helen Sigman & Assocs.*, Ltd., 611 F.3d 356, 362 (7th Cir. 2010); *Howell v. Dewey*, 817 F. App'x 268, 270 (7th Cir. 2020); *Weinhaus v. Cohen*, 773 F. App'x 314, 316 (7th Cir. 2019). I am not inclined to recruit counsel until this case has undergone additional merits review at the summary judgment stage.

In sum, I have no reason to think that Gilbank cannot represent herself in this case, and I decline to recruit counsel or a guardian ad litem so that T.E.H. may pursue claims. Therefore, I will dismiss T.E.H.'s claims without prejudice. If Gilbank is able to find a guardian ad litem or lawyer to represent T.E.H., she may ask that T.E.H.'s claims be reinstated.

**B. Judge Potter and Judge Brazeau's motion to dismiss**

Gilbank contends that Judge Potter violated her due process rights by refusing to reopen the initial custody hearing, by recusing himself, and by transferring Gilbank's case to Judge Brazeau. She contends that Judge Brazeau violated her due process rights by denying her motion to reopen or to dismiss her criminal case and by continuing the orders regarding T.E.H.'s placement with Hoyle and Gilbank's contact with T.E.H.

Potter and Brazeau have moved for dismissal of the claims against them on the grounds that the claims are barred by Eleventh Amendment sovereign immunity and judicial immunity. I will grant their motions. If Gilbank is suing the judges in their official capacities, her claims

9

are barred by the Eleventh Amendment. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) (federal suits against state officials in their official capacities are barred by Eleventh Amendment sovereign immunity). If Gilbank is suing the judges in their individual capacities, her claims are barred by the doctrine of judicial immunity because Gilbank is complaining about Potter's and Brazeau's judicial conduct. *See Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006) (judges have absolute immunity for damages claims based on judicial conduct). Therefore, Gilbank's claims against Potter and Brazeau will be dismissed.

### C. Wood County Defendants' motion to dismiss (Wood County Department of Human Services, Heinzen-Janz, Christensen, La Chappelle, and Mary Solheim)

Defendant Wood County Department of Human Services has moved to dismiss all claims against it on the ground that it is not an entity that may be sued under § 1983. I will grant that motion. State law determines whether a government entity may be sued. Fed. R. Civ. P. 17(b). Under Wisconsin law, municipal departments and subdivisions are arms of the municipality, and cannot be sued. *See, e.g.*, *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) (sheriff's department is not a "legal entity separable from the county government" and thus is not subject to suit under § 1983). Wood County Department of Human Services is a department of Wood County, and it is not a separate entity that may be sued.

The four Wood County social workers—Heinzen-Janz, Christensen, La Chappelle, and Mary Solheim—have moved for dismissal of Gilbank's conspiracy claims brought under 42 U.S.C. § 1986 on the ground that the claims are untimely. Section 1986 creates a cause of action against individuals who conspire to interfere with a person's civil rights. But § 1986 has

10

a one-year statute of limitations. *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 700 (7th Cir. 2005). The county defendants argue that Gilbank's only conspiracy allegations are her allegations regarding Heinzen-Janz's and other social worker's actions to remove T.E.H. from Gilbank in August 2018. They argue that because Gilbank did not file this lawsuit until June 30, 2020, her § 1986 claims are untimely.

I agree with defendants. Although Gilbank alleges in her amended complaint that T.E.H. was not returned to to her until February 2020, and that Wood County social workers refused to help her between August 2019 and February 2020, her amended complaint includes no allegations suggesting that the county defendants engaged in conspiratorial acts within the year before she filed this lawsuit. Therefore, I will dismiss Gilbank's conspiracy claims.

### D. Children's Hospital of Wisconsin's motion to dismiss

Gilbank contends that Children's Hospital of Wisconsin violated her constitutional rights when it required her to sign a release authorizing T.E.H.'s father, Ian Hoyle, to receive information about Gilbank's visits with T.E.H. Gilbank says that the Children's Hospital staff told her that signing the release was optional, but that she would not get to T.E.H. if she did not sign it. Children's Hospital has moved to dismiss any claims against it on the ground that Gilbank's allegations do not state a federal claim upon which relief may be granted.

I will grant the motion. Gilbank's allegations do not suggest that Children's Hospital was acting in a governmental capacity when it provided the release form to Gilbank, so Gilbank cannot sue Children's Hospital for constitutional violations under § 1983. And even if the hospital was acting in a government capacity, Gilbank's allegations do not suggest that the hospital violated any of her constitutional rights. Nor has Gilbank articulated any constitutional violation. Gilbank referred to HIPAA in her complaint, but individuals cannot

11

sue to enforce their rights under the Health Insurance Portability and Accountability Act. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). Gilbank also argues that Children's Hospital conspired to deprive her of her civil rights, in violation of 41 U.S.C. § 1986, but her allegations do not support a conspiracy claim against the hospital. And as discussed above, any conspiracy claims are untimely. Therefore, Gilbank's claims against Children's Hospital will be dismissed.

ORDER

IT IS ORDERED that:

1. The motions to dismiss filed by defendants Nicholas Brazeau, Jr. and Gregory Potter, Dkt. 4 and Dkt. 7, are GRANTED. Brazeau and Potter are DISMISSED from this case.

2. The motion to dismiss filed by defendants Wood County Department of Human Services, Mary Christensen, Theresa Heinzen-Janz, Anne La Chapelle, and Mary Solheim, Dkt. 17 and Dkt. 31, are GRANTED. Wood County Department of Human Services is DISMISSED from this case.

3. The motion to dismiss filed by defendant Children's Hospital of Wisconsin, Dkt. 19, is GRANTED. Children's Hospital is DISMISSED from this case.

4. Plaintiff Michelle Rene Gilbank's motion for an exemption from PACER fees, Dkt. 16, and motion for assistance in recruiting counsel or a guardian ad litem, Dkt. 37, are DENIED without prejudice. The clerk of court shall provide a financial affidavit form to Gilbank.

5. T.E.H.'s claims are DISMISSED without prejudice.

Entered December 15, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge