UNITED STATES DISTRICT COURT

for the

Western District of Wisconsin

Civil Division

| | |
|---|---|
| MICHELLE R GILBANK, et al., | Case No.: 20-CV-601-JDP |
| Plaintiffs, | |
| vs. | PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 |
| WOOD COUNTY DHS, et al., | |
| Defendants. | |

Plaintiff hereby submits this Proposed Findings of Fact, together with references to supporting evidence in response to Wood County defendants' Motion for Summary Judgement against plaintiff.

The name of the minor child of Plaintiff is abbreviated throughout this document using the first letters of the minor's first name, middle name, and last name ("T.E.H.").

1. Wood County Defendants Theresa Heinzen-Janz, Mary Christensen, and Anne La Chapelle relied on CPServices Access & Initial Assessment Standards in evaluating the safety of T.E.H. (Dkt. 114-07, p. 3, ¶ 3)

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 1

2.   The CPS Access and Initial Assessment Standards requires that thorough information be gathered in the following areas:

- Maltreatment including alleged maltreatment, and any other type of maltreatment occurring within the family.
- Surrounding Circumstances including circumstances leading up to maltreatment and the parent's/caregiver's response.
- Child Functioning including general functioning, disabilities, or special needs of all children in the household, effects of any maltreatment, and child vulnerabilities.
- Adult Functioning including general functioning, mental, emotional and physical health, disabilities, and enhanced and diminished Parent/Caregiver Protective Capacities (see CPS Safety Intervention Standards, Appendix 8: Parent/Caregiver Protective Capacities).
- Parenting Practices including general parenting practices, discipline practices, and enhanced and diminished parent/caregiver protective capacities.
- Family Functioning including strengths and current stresses.

(dkt.114-1, p.89)

3. On 07/03/2018, Defendants Heinzen-Janz and Iverson were made aware that Ian Hoyle's visitation with T.E.H. was required to be supervised. *"He gets 4 hours of supervised visits at PDC once per week."* (Dkt. 114-1, p.2)

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 2

4. On 07/03/2018, Defendants Heinzen-Janz and Iverson were made aware that Ian Hoyle's counseling was due to anger management issues. *"Ian is currently undergoing counseling for himself for anger management, and it is partly due to plaintiff's behavior."* (Dkt.60-6, p.5, ¶ 3) *"Ian is currently undergoing counseling for himself for anger management."* (Dkt. 107-01, p. 18, ¶ 3)

5. On 07/03/2018, Ian Hoyle *"expressed that he never sees <plaintiff> sleep, but he has never seen her use either"* to defendants Heinzen-Janz and Iverson. (Dkt. 107-1, p.18, ¶ 6)

6. On 07/03/2018, Defendants Heinzen-Janz and Iverson were made aware that Ian Hoyle *"abused alcohol and likes downers"*. (Dkt. 107-01, p.18, ¶ 7 )

7. On 07/11/2018, Defendant Heinzen-Janz was made aware of further domestic violence by Ian Hoyle towards plaintiff and T.E.H., and that Ian Hoyle and plaintiff *"fight constantly out in the open because he doesn't let her <or T.E.H.> into the apartment when he is home."* (Dkt. 107-1, p.52, ¶ 1, line 8)

8. Wisconsin CPS Access and Initial Assessment Standards, Appendix 3, instructs CPS workers of the following:
Absent a direct allegation of abuse or neglect to a child, a report of children exposed to domestic violence should be screened-in as a CPS report according to the following criteria:

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 3

• A report is made in which there is reasonable cause to suspect there is current domestic violence or the abuser has a history of domestic violence, and

o there is reason to suspect the child is intervening or will intervene, placing him or her at risk of injury, or

o the child is likely to be injured during the violence (e.g., being held during the violence, physically restrained from leaving), or

o <u>the alleged perpetrator does not allow the protective parent and child access to basic needs impacting their health or safety</u>

(dkt.111-1, p.98, ¶ 2)

9. Ian Hoyle has a history of domestic violence. 11/06/97 – Arrest, Battery; 01/30/97 – Arrest, Domestic Abuse Counseling ordered; 10/24/96 – Arrest, Domestic Abuse ; 10/23/96 – Arrest, Batterer's Group ordered. Ian Hoyle also has a history of sexual assault of a child, drug use, criminal trespass, burglary, DUIs, violating probation, and failure to register as a sex-offender. (Dkt. 60-7, p. 2-4)

10. On 07/26/2018, Defendants Heinzen-Janz and Iverson were made aware of further domestic violence by Ian Hoyle towards plaintiff and T.E.H. Defendant Heinzen-Janz states in her report that *"This worker, Social Worker Taylor Young, and defendant Iverson conducted an unannounced home visit."* She leaves out entirely that the cause of the visit was Ian Hoyle placing a phone call to defendant Iverson's personal cell phone in a fury because plaintiff confronted him about his lying and abuse. (Dkt. 114-2, p.4)

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 4

11. Wisconsin CPS Access and Initial Assessment Standards, Appendix 3, instructs CPS workers of the following:

- The abuser may not be a reliable source of information about his violent behavior or his use of power and control tactics. Better sources of information include the adult and child victims, police reports, medical reports, and collateral contacts.

- Be aware that perpetrators of domestic abuse often appear very believable and controlled, especially during initial interviews. An abuser may also present himself as a victim of domestic abuse.

- Interview the domestic abuser in a way that encourages disclosure of abusive conduct. Domestic abusers routinely deny, minimize, or blame the victim for their violent behaviors. Ask specific questions about behaviors, as a perpetrator may not think of their actions as violent or abusive. For example, he may believe that "violence" refers to a serious injury requiring medical attention, whereas pushing, slapping or hitting is simply "arguing" or "disagreeing".

- If an alleged maltreater denies domestic abuse, do not try to force disclosure, but move on to other subjects. Angry confrontations with domestic abuse perpetrators can result in retaliation against the child or adult victim. You do not need the perpetrator's disclosure to confirm that domestic abuse has occurred. Such confirmation comes from adult and child victim statements, CPS professional observations and other agency reports.

(Dkt.114-01, p.103, ¶ 1-4)

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 5

12. On 07/03/2018, at the exact same time that plaintiff was waiting patiently for defendant Heinzen-Janz to appear for her scheduled appointment to assist plaintiff in finding safe housing and leaving Ian Hoyle, Ian Hoyle contacted defendant Iverson to arrange a meeting in which he could gaslight, scapegoat, and slander plaintiff.  Defendant Iverson agreed to meet with him immediately.  Defendant Heinzen-Janz did not call or show up to her appointment with plaintiff for resources, but instead went with defendant Iverson to speak with Ian Hoyle.  (Dkt. 60-06, p. 5-7)

13. On 08/21/2018, during plaintiff's interrogation, plaintiff says that all she wants is to be on a regulated prescription. Defendant Iverson responds, *"And that sucks…"*
(Dkt. 60-09 @ 13:30:23)

14. On 08/21/2018, during plaintiff's interrogation, defendant Iverson states, *"Now I don't think <T.E.H.> would be better off with <Ian Hoyle>. I don't think that at all. I think she'd be better off with her mom."* (Dkt. 60-09 @ 13:)

15. On 08/21/2018, during plaintiff's interrogation, defendant Iverson reads plaintiff her Miranda Rights, including her right to have an attorney present during questioning, or to rewquest one at any time during questioning.
(Dkt. 60-09 @ 13:33:00)

16. On 08/21/2018, during plaintiff's interrogation, defendant Iverson states, *"you do really well with Tesla from what I've seen, and she shows it. I mean, she clings right to you."*

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 6

(Dkt. 60-09 @ 13:44:50)

17. On 08/21/2018, after attending the plaintiff's interrogation, defendant Heinzen-Janz completed a petition for protection or services. *"Based on Michelle's lack of cooperation present danger threats were identified in that the parent overtly rejects intervention and the parent is intoxicated now or is consistently under the influence, therefor, the department took temporary physical custody and placed her in the care of her father."* (Dkt. 82-08, p. 2, ¶ 7)

Thank you.

Dated at Marshfield, Wisconsin, this 16th day of September, 2021.

*Michelle R. Gilbank*
Michelle R. Gilbank, pro se

PLAINTIFF'S STATEMENT OF PROPOSED FINDINGS OF FACT #2 - 7