IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE R. GILBANK,

                    Plaintiff,

     v.

MARSHFIELD POLICE DEPARTMENT,                    OPINION and ORDER
THERESA HEINZEN-JANZ, DEREK IVERSON,
MARY CHRISTENSEN, ANNE LACHAPELLE,                    20-cv-601-jdp
and MARY SOLHEIM,

                    Defendants.

---

Pro se plaintiff Michelle R. Gilbank lost custody of her minor daughter for more than a year after she was arrested for possession of methamphetamine. Gilbank filed this lawsuit against the individuals involved in arresting her and placing her daughter in protective custody. Gilbank contends that defendants violated her constitutional rights by falsifying evidence, removing her daughter without probable cause to believe that she was in danger, and denying Gilbank the opportunity to challenge the removal.

All parties have filed motions for summary judgment that are ready for decision. Dkt. 58 (Gilbank's motion); Dkt. 75 (Wood County defendants' motion): Dkt. 66 (Marshfield defendants' motion). Gilbank argues in her numerous briefs that defendants violated her rights under the United States Constitution and Wisconsin law by taking various actions that resulted in her losing custody of her daughter.

I understand Gilbank's frustration with aspects of the state proceedings. But Gilbank's primary injury—loss of custody of her daughter—was the result of the state juvenile court decision. For reasons explained in this opinion, this court does not have authority to review state court decisions. Gilbank's recourse is to appeal those decisions through the state court

system, and from there to the United States Supreme Court. The other injuries about which Gilbank complains—the warrantless urine test, denial of counsel, and denial of due process— were either already addressed by the state juvenile court or are not constitutional violations. Accordingly, I must deny Gilbank's motion for summary judgment and grant defendants' motions.

## UNDISPUTED FACTS

I find the following facts to be undisputed unless otherwise noted.

### A.  The parties

Michelle Gilbank is the mother of a minor daughter, T.E.H., who was born in 2014. Plaintiff had sole custody and placement of T.E.H. until November 2017, when Ian Hoyle, T.E.H.'s father, was granted supervised visitation rights. (Hoyle's visits were supervised because he has a prior conviction for first-degree sexual assault of a child.) Gilbank has a history of mental illness, including post-traumatic stress disorder, and methamphetamine use.

During the relevant time, defendant Derek Iverson was a detective with Marshfield Police Department in Marshfield, Wisconsin. The other defendants worked for Wood County Human Services Department: Theresa Heinzen-Janz was an initial assessment social worker; Anne LaChapelle was an initial response social worker supervisor; and Mary Solheim was the deputy director of the Human Services.

### B.  Gilbank's contact with Heinzen-Janz and Iverson

In February or March 2018, Gilbank and T.E.H. were living at a friend's house. When the house went into foreclosure, Gilbank and T.E.H. moved into Ian Hoyle's apartment. T.E.H. had her own room in Hoyle's apartment, and Gilbank slept either in the apartment or the

garage. Gilbank and Hoyle's relationship was tense. Hoyle did not like Gilbank living at the apartment, and Gilbank accused Hoyle of being an alcoholic with anger management problems.

Gilbank and T.E.H. were still living with Hoyle in June 2018, during a time of extremely hot weather. On June 29, 2018, an anonymous caller contacted Wood County Human Services and reported that she was worried about a woman and her child who appeared to be living in Hoyle's garage, which lacked air conditioning. Defendants Heinzen-Janz and Detective Iverson went to Hoyle's apartment and talked to Gilbank and T.E.H. Defendants noted that T.E.H. had her own room in the apartment and that she appeared to be well-cared for and in good health. But Gilbank told Heinzen-Janz that the apartment was not a good environment for T.E.H., and that she needed help finding better housing, access to prescription medications, and mental health care for herself. Heinzen-Janz told Gilbank that she would assist her, and they scheduled a meeting for the following week.

In preparation for the follow-up meeting, Heinzen-Janz reviewed Gilbank's history with Wood County Human Services. Heinzen-Janz learned that Gilbank had had contact with Human Services in the past. She also learned that Gilbank had a history of drug use, and that she had a pending charge for methamphetamine possession from August 2017. Heinzen-Janz and Detective Iverson also talked to Hoyle about Gilbank. Hoyle told them that he was concerned about Gilbank's drug use and that he wanted her to move out of his apartment.

Heinzen-Janz and Iverson met with Gilbank on July 3, 2018. Gilbank thought that Heinzen-Janz had come to talk to her about housing options, and she was upset that Iverson was present. Heinzen-Janz and Iverson asked Gilbank about her drug use. Gilbank admitted that she had used methamphetamine in the past, but she stated that she had not used it in approximately three weeks. Gilbank agreed to provide a urine sample.

Gilbank's urine sample was positive for amphetamines and methamphetamines. When Heinzen-Janz and Iverson shared the urinalysis results with Gilbank, Gilbank denied using drugs and insisted that the results were wrong. She told Heinzen-Janz and Iverson that she had recently used Hoyle's sinus inhaler, which might have caused a false positive. (Gilbank continues to insist that the results were wrong, but her dispute is immaterial to the summary judgment motions. In any case, Gilbank now admits that she smoked methamphetamine "residue" on July 1, 2018, two days before providing the urine sample.) Despite Gilbank's positive urinalysis, neither Heinzen-Janz nor Iverson threatened or attempted to arrest Gilbank or remove T.E.H. from Gilbank's custody.

## C.  Gilbank's arrest and loss of custody

Between July and August 2018, Gilbank contacted a health clinic for mental health assistance, had found a lead on an apartment, and had obtained money for a security deposit from a community organization. But on August 21, 2018, Gilbank was pulled over for driving with a suspended license. The officer requested the assistance of K9 unit, which arrived and alerted to the presence of a controlled substance. T.E.H. was in the vehicle with Gilbank at the time, so Gilbank called Hoyle, who came with his mother and left with T.E.H. Officers searched Gilbank's vehicle and found 0.7 grams of methamphetamine, a glass pipe with white crystal-like residue, and three clear plastic bags containing a white crystal-like residue. Gilbank was then arrested for possession of methamphetamine and drug paraphernalia.

Gilbank was taken to the police department, where she was interviewed by Heinzen-Janz and Detective Iverson. (The parties submitted an audio and video recording of the interview with the court.) Iverson read Gilbank her *Miranda* rights, and Gilbank told Iverson that she did not want to answer questions without a lawyer present. Iverson responded that he

would not talk to her about the items that had been found in her vehicle, but that he needed to talk to her about her drug use as it related to T.E.H. Iverson stated that he thought that Gilbank was still using methamphetamine because she was associating with known drug dealers and users. Heinzen-Janz told Gilbank that she wanted to create a safety plan under which T.E.H. could stay with Gilbank, but that Gilbank needed to cooperate. Gilbank responded that she had never used methamphetamine around T.E.H., and she denied having a methamphetamine problem. She stated that she was trying to be a better person, had made some progress toward finding housing and health care, and that she needed help. Iverson questioned Gilbank's truthfulness, stating that drugs were found in the vehicle where T.E.H. had been a passenger, that Gilbank had admitted to medicating with methamphetamine, and that she had had a positive urine test for methamphetamine the previous month. Gilbank eventually refused to talk any further. Heinzen-Janz told her that the county would be taking temporary physical custody of T.E.H. and placing her with Hoyle, that a hearing would be held in a day or two, and that Heinzen-Janz would call Gilbank to tell her the time and date of the hearing. Gilbank was taken to the county jail.

Heinzen-Janz filed a request for temporary physical custody in Wood County Juvenile Court the following day. The request stated that Gilbank had been arrested and taken into custody for drug possession, that Gilbank had refused to cooperate with safety planning, and that T.E.H. would be subjected to neglect due to Gilbank's drug use. Heinzen-Janz also submitted a petition for a child in need of protective services under Wis. Stat. § 48.13(10), commonly referred to as a "CHIPS petition." The CHIPS petition stated that Gilbank could not care for T.E.H. because she continued to deny her drug use, had refused to cooperate with Human Services, and was consistently intoxicated or under the influence of drugs. The CHIPS

5

petition also stated that Gilbank had allowed individuals involved in selling and using drugs to interact regularly with her children, and that she refused to acknowledge the risks to T.E.H.'s safety. (Gilbank disputes the accuracy of Heinzen-Janz's statements in the CHIPS petition, noting that, among other things, she was not consistently under the influence, that she had not been offered any help or a plan from Heinzen-Janz or the county, and that she did not permit drug users or dealers to be around T.E.H.)

## D. Court proceedings

### 1. Temporary physical custody hearing

A temporary physical custody hearing was scheduled for August 23, 2018. Heinzen-Janz called the Wood County jail, and jail staff told her that they would notify Gilbank about the hearing. But Gilbank had been released, so she did not receive notice of the hearing.

The hearing was held in juvenile court without Gilbank. A guardian ad litem that had been appointed for T.E.H. was present, as was an assistant district attorney, Heinzen-Janz, and Ian Hoyle. The guardian ad litem had not yet met or spoken to Gilbank or T.E.H., but he gave the opinion that it was in the best interest of T.E.H. to be placed with Hoyle. The court concluded that the information in the temporary custody request provided by Heinzen-Janz established probable cause to find that Gilbank was neglecting T.E.H., or was unable to provide adequate supervision and care of T.E.H. The court ordered that T.E.H. should be placed with Hoyle until the next hearing. Heinzen-Janz and Iverson instructed Hoyle that if Gilbank came to his house to see T.E.H., he should tell her that visits had to be arranged and supervised by Human Services. They also told Hoyle to call the police if Gilbank refused to leave.

On August 24, 2018, Gilbank filed a motion to dismiss the temporary custody order. She argued that the order was not necessary because she had already placed T.E.H. in the

temporary custody of her father, Hoyle. She also argued that there was insufficient evidence to support taking her child, and that various government actors had violated her constitutional rights. She requested that the probable cause hearing be reopened because she had not received notice of it. The court denied Gilbank's motion.

### 2.  CHIPS petition evidentiary hearings

An evidentiary hearing on the CHIPS petition was held on September 25, 2018. Heinzen-Janz filed a report with the court that described, among other things, T.E.H.'s current situation, Gilbank's history, and Human Service's recommendations regarding placement and visitation. Heinzen-Janz recommended that T.E.H. remain in the care of her father, Hoyle, based on Gilbank's continued denial of her drug use and her lack of cooperation with the Human Services.

Gilbank appeared at the hearing with an attorney. An assistant district attorney presented evidence from Hoyle, Iverson, Heinzen-Janz, and the police officer who had arrested Gilbank for possession of methamphetamine the previous month. Hoyle testified that the last time he saw Gilbank use drugs was in January 2017, and that he and Gilbank had used drugs together on that occasion, but that he suspected she might still use drugs. Hoyle also testified that Gilbank was meeting all of T.E.H.'s needs, and that he did not have concerns about T.E.H. being fed, clothed, housed, or well-nourished. Iverson testified that T.E.H. appeared to be clean, well-fed, and well-cared for in his interactions with her. But Heinzen-Janz gave the opinion that even though T.E.H. had been well-cared for, and that Gilbank had taken steps to secure housing and mental health treatment, Gilbank's ongoing methamphetamine use presented an unsafe situation for T.E.H. Heinzen-Janz also stated that Gilbank had refused to cooperate since her arrest, though she admitted that Gilbank had contacted Human Services

immediately after her release to find out what she needed to do to obtain visitation with T.E.H. Heinzen-Janz also conceded that Gilbank might have been reluctant to discuss drug use after being arrested because law enforcement was present, she had been read her *Miranda* rights, and she did not want to incriminate herself.

Gilbank's attorney cross-examined the state's witnesses, but she did not present any evidence or call witnesses on Gilbank's behalf. Her attorney argued that the state had failed to meet its burden to show that T.E.H. was in danger or that Gilbank had neglected T.E.H. The guardian ad litem gave the opinion that T.E.H. needed protective services, and that he did not object to her placement with Hoyle. The court found that T.E.H. needed to be protected from Gilbank's drug use, and it ordered supervision of T.E.H. for a period not exceeding one year. Another hearing on placement was set for October 29, 2018.

At the October 29 hearing, Gilbank's attorney argued that T.E.H. should be placed with Gilbank, and that Gilbank could comply with all of the court's and Human Service's recommendations while retaining custody of T.E.H. Gilbank testified on her own behalf, stating that she had not used methamphetamine since before August 2018, and that she provided a more nurturing and attentive environment for T.E.H. than Hoyle did. A friend of Gilbank's testified that Gilbank had been living with her, in a house, for approximately three weeks, that T.E.H. could live there and have her own room, that she had no concerns about unannounced visits from Human Services, and that she had never used methamphetamines. Gilbank also presented letters written by Hoyle, Scott Gilbank (her husband, from whom she was separated), and her daughter, all of whom described Gilbank's positive parenting.

Heinzen-Janz testified that T.E.H. should remain with Hoyle because Gilbank's drug use and lack of cooperation made reunification impossible. The court agreed with Heinzen-

Janz, and it concluded that T.E.H. needed protection from Gilbank due to Gilbank's methamphetamine addiction. The court ordered that T.E.H. should remain with Hoyle for at least a year. Gilbank later filed a pro se motion to dismiss the CHIPS petition, arguing that the state had failed present evidence that T.E.H. had been neglected, that the court had refused to permit Gilbank to present evidence, and that T.E.H. should be placed with Gilbank. The court denied the motion.

### 3. CHIPS closure hearing and Gilbank's appeal

On September 9, 2019, the Wood County Juvenile Court held a closure hearing on the CHIPS petition. All of the involved parties, including Gilbank and Hoyle, agreed that the CHIPS case should be closed because there was a separate case in family court addressing custody and physical placement of T.E.H. The court agreed, and it entered an order closing the CHIPS case.

On November 1, 2019, Gilbank filed a pro se appeal of the closure order. The Wisconsin Court of Appeals dismissed Gilbank's appeal in January 2020, noting that Gilbank had no standing to appeal because she had approved of the closure order in the circuit court. In addition, the CHIPS case no longer governed the custody and placement of T.E.H.

In March 2020, Gilbank regained sole custody of T.E.H.

### E. Federal lawsuit

Gilbank filed this lawsuit in June 2020. In her complaint, Gilbank sued nearly everyone involved in the investigation and legal proceedings regarding the removal of T.E.H. from Gilbank's custody, including police officers, social workers, and the presiding judges in juvenile court. She raised numerous claims under the constitution and various statutory provisions. I dismissed several of her claims in a previous order, Dkt. 41, including her claims against the

state court judges, Children's Hospital of Wisconsin, and Wood County Department of Human Services. I also dismissed T.E.H. as a plaintiff.

During discovery and the briefing of the summary judgment motions, Gilbank withdrew a number of claims, including her claims under HIPPA and the First Amendment, Sixth Amendment, Seventh Amendment, and Eighth Amendment. Dkt. 115, ¶ 83 and Dkt. 118, at 2–3. Because Gilbank has withdrawn these claims, I need not discuss them further.

The remaining defendants are four Wood County social workers (Theresa Heinzen-Janz, Mary Christensen, Ann LaChappelle, and Mary Solheim), the Marshfield Police Department, and Marshfield police detective Derek Iverson. Gilbank's claims against Christensen, LaChappelle, and Soheim are largely based on their supervising and approving Heinzen-Janz's actions.

OPINION

Gilbank contends that the remaining defendants violated her constitutional rights by: (1) taking a urine sample without a warrant; (2) failing to provide a lawyer to her during her post-arrest interrogation; (3) temporarily placing T.E.H. with Hoyle without probable cause to believe that T.E.H. was in danger; (4) pursuing the CHIPS petition based on false and incomplete information about Gilbank and Hoyle; (5) failing to give Gilbank adequate notice and an opportunity to be heard regarding T.E.H.'s placement; (6) evicting Gilbank from her home at Hoyle's house and rendering her homeless; (7) restricting the visitation that Gilbank had with T.E.H.; and (8) violating numerous state statutes that govern protective custody.

I am sympathetic to Gilbank's arguments. By all accounts, Gilbank and T.E.H. had a strong bond, and T.E.H. was a happy and healthy child despite Gilbank's ongoing struggle with

methamphetamine. Gilbank was understandably devastated and angry when she lost custody of her daughter. She had only recently reached out to defendants for help with housing and mental health care, and she felt betrayed by the results of her efforts. To make matters worse, the juvenile court's order on the CHIPS petition essentially left Gilbank homeless, as it prohibited her from living with T.E.H. at Hoyle's apartment, where Gilbank had been staying prior to her arrest.

But most of the injuries about which Gilbank now complains were the result of the Wood County Juvenile Court's orders in the CHIPS case. Over the course of multiple hearings, the juvenile court considered Gilbank's claims that T.E.H. was seized without probable cause and was not in need of protection. The state court heard the arguments, weighed the evidence, determined credibility, and found probable cause that T.E.H. was in need of protection. The court considered and approved the requirements of the CHIPS petition regarding T.E.H.'s placement and Gilbank's visitation rights. The *Rooker-Feldman* doctrine prohibits this court from reviewing those orders or to issue a decision that would undermine the validity of those orders.

Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction over cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *See also Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16, (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983); *Golden v. Helen Sigman & Assoc.*, 611 F.3d 356, 361–62 (7th Cir. 2010). The *Rooker-Feldman* doctrine also prohibits lower federal courts from deciding matters "inextricably related to state court decisions." *EOR Energy LLC v. Illinois Envtl. Prot. Agency*, 913 F.3d 660, 664 (7th Cir. 2019).

Gilbank argues that the juvenile court's decisions were the result of fraud and constitutional violations. She argues that defendants presented false evidence about her drug use and alleged neglect of T.E.H. She accuses defendants of meeting secretly with Hoyle, of using a warrantless urinalysis, and of pressuring her to talk about her drug use without an attorney, all in an effort to remove T.E.H. from her custody. She also complains that defendants and the juvenile court failed to follow state statutory requirements that would have given Gilbank greater notice and additional opportunities to present evidence during the CHIPS proceedings.

But Gilbank presents all of these arguments as a way to attack the juvenile court's decision to provide T.E.H. with protective services and place her with Hoyle. Because a finding in Gilbank's favor would contradict the state court's orders, this court does not have jurisdiction over her claims. *See Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020) (lawsuit is barred by *Rooker-Feldman* doctrine if "any finding in favor of the [plaintiff] would require [the federal court] to contradict the state court's orders"); *Golden*, 611 F.3d at 362 (federal court lacked jurisdiction to hear claim based on injuries caused by state-court custody orders unfavorable to plaintiff); *Dillon v. Indiana Dep't of Child Servs.*, 841 F. App'x 1003, 1004 (7th Cir. 2021) (*Rooker-Feldman* barred claim "that serious constitutional violations produced the state court's adverse judgments"). Arguments like Gilbank's must be pursued on appeal through the state courts. Gilbank's only federal remedy would be to seek review of the state-court decisions in the United States Supreme Court.

Gilbank contends that some of her injuries occurred prior to, and exist independently of, the state court's custody decision. Specifically, she argues that, regardless of the state court's protection and custody decisions, she was injured by the following: (1) the warrantless

urinalysis; (2) the interrogation without an attorney at the police station; and (3) the denial of due process. If these injuries were actually independent of the state court's decisions, Gilbank might be able to recover for those injuries in federal court. *See Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[I]f a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury."). But even if I assumed that Gilbank suffered injuries that were not caused by, or inextricably related to, the state court's decisions, Gilbank has not presented evidence to support any constitutional violations based on the above incidents.

First, Gilbank consented to the urinalysis. Although she says she felt pressured to consent, she does not say that defendants threatened her, bribed her, or otherwise suggested that she had no choice but to consent. Because she consented to the urinalysis, she cannot sustain a constitutional claim against defendants based on an unlawful search or seizure. *See United States v. White*, 781 F.3d 858, 860–61 (7th Cir. 2015) (Fourth Amendment protections do not apply when person consents to the search).

Second, defendants' questioning of Gilbank without an attorney did not violate her Fifth Amendment right against self-incrimination. The Fifth Amendment guarantees that no person "shall be compelled in any *criminal case* to be a witness against himself." U.S. Const. Amend. V (emphasis added). The Fifth Amendment does not apply to state child protection proceedings. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (to assert viable § 1983 claim based on violation of the right against self-incrimination, the incriminating statement at issue must be used in a criminal case). Because Gilbank has not alleged that any statements that she made during the interview with Heinzen-Janz and Iverson after her arrest were used against her in a criminal proceeding, she has not stated a Fifth Amendment claim.

Third, Gilbank's due process arguments were either addressed and rejected by the state court already, they lack merit, or they are based solely on state statutes that do not support a federal constitutional claim. Gilbank argued in state juvenile court that she was denied improper notice and that the probable cause hearing should be reopened. The state court rejected her arguments. So Gilbank's due process claims based on improper notice and procedural flaws at the probable cause hearing are barred by the doctrine of issue preclusion, which bars relitigation of issues that have been litigated and decided in a previous action. *See Aldrich v. Labor & Industry Review Commission*, 2012 WI 53, ¶ 88, 341 Wis. 2d 36, 68, 814 N.W.2d 433, 449; *Jensen v. Foley*, 295 F.3d 745, 747 (7th Cir. 2002) (state court probable cause finding in child endangerment proceedings precluded relitigation of the issue).

In addition, Gilbank's due process arguments are not supported by evidence. The undisputed facts show that Gilbank, with the assistance of counsel, was given multiple opportunities to challenge the removal of T.E.H. from her custody. She was permitted to present witnesses and other evidence, testify on her own behalf, and cross-examine the state's witnesses. Although Gilbank was unsatisfied with the results of the state court hearings, she was provided process sufficient to satisfy federal constitutional standards.

Finally, Gilbank's arguments that defendants and the state court failed to adhere strictly to state statutory requirements for child protection hearings are not sufficient to state a federal due process violation. *See Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right.").

In sum, most of Gilbank's claims are based on injuries that were either caused by the state juvenile court's decision or were considered and rejected already by a state court. This court cannot provide Gilbank relief on those claims. Gilbank's other claims lack any evidentiary basis. Defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Michelle Gilbank's motion for summary judgment, Dkt. 58, is DENIED.

2. The motion for summary judgment filed by defendants Derek Iverson and Marshfield Police Department, Dkt. 66, is GRANTED.

3. The motion for summary judgment filed by defendants Mary Christensen, Theresa Heinzen-Janz, Anne La Chapelle, and Mary Solheim, Dkt. 75, is GRANTED.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 10, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge